UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN KEVIN DALEY,

                        Plaintiff,

        v.

TOWN OF ORCHARD PARK, VIA: Police
Officer Robert Simmons, POLICE OFFICER
ROBERT SIMMONS, TWIN CITY
AMBULANCE CORP., TOWN OF
TONAWANDA, VIA: These Police Officers:
Frank Bartolotta, Badge #001, Dave Humphrey,
Badge #121, Dave Gennuso, Badge #086,
FRANK BARLOTTA, Police Officer Badge #001,
DAVE HUMPHREY, Badge #121, DAVE
GENNUSO, Badge #086, ERIE COUNTY, NY,
VIA: Mark Poloncarz, Erie County Executive,
ERIE COUNTY MEDICAL CENTER
CORPORATION, VIA: It's Medical Facility and
Psychiatric Ward & Park, Won Hoon, MD,
Ruggieri, Matthew, MD, Brooks, Victora, MD,
PARK, WON HOON, MD, RUGGIERI,
MATTHEW, MD, and U.P.P., INC., VIA: Employees:
Ruggieri, Matthew, MD and Park, Won Hoon, MD,

                        Defendants.

**DECISION AND ORDER**

1:16-CV-00325 EAW



---

## INTRODUCTION

Plaintiff John Kevin Daley ("Plaintiff") filed this action on April 27, 2016, pursuant to 42 U.S.C. § 1983, claiming violations of his constitutional rights. (Dkt. 1). Plaintiff filed an amended complaint on May 26, 2016. (Dkt. 4). Each of the above-named Defendants ("Defendants") has filed a motion to dismiss the amended complaint. (*See* Dkt. 15; Dkt. 21; Dkt. 26; Dkt. 27; Dkt. 35; Dkt. 48; Dkt. 51). Plaintiff filed two

motions for more definite statements (Dkt. 59; Dkt. 69) as to Defendants' motions to dismiss. Additionally, Plaintiff filed motions to opt out of alternative dispute resolution ("ADR") (Dkt. 53); for injunctive relief (Dkt. 9); for a Federal Bureau of Investigation ("FBI") investigation (*id.*); and for an extension of time (Dkt. 10). Plaintiff also requests an order of the Court appointing a special prosecutor. (*See* Dkt. 100 at ¶ 23). Finally, Defendants Dr. Won Hoon Park and Erie County, New York filed motions for injunctive relief. (Dkt. 82; Dkt. 92).

For the reasons set forth below, the amended complaint is dismissed without prejudice for failure to comply with Fed. R. Civ. P. 8(a). Plaintiff will have the opportunity to amend his complaint one final time.

Further, for the reasons stated below, Plaintiff's motions for more definite statements are denied; his motion to opt out of ADR is granted; his motion for injunctive relief is denied; his motion for an FBI investigation is denied; and his motion for an extension of time is denied as moot. To the extent that Plaintiff requests an order of the Court appointing a special prosecutor, such request is denied.

Finally, Defendants Dr. Won Hoon Park and Erie County, New York's motions for injunctive relief are denied without prejudice.

## FACTUAL BACKGROUND

Plaintiff claims violations of his constitutional rights by Defendants in connection with his involuntary hospitalization. (Dkt. 4). Plaintiff, proceeding *pro se*, is a self-described "Born Again Christian." (*Id.* at ¶ 2). A vast majority of his voluminous amended complaint—which is 175 pages in length including attachments—and other

motion papers recite biblical passages, state that opposing parties and Court officials worship Satan, and express Plaintiff's devotion to his religious beliefs, with little or no relevance to Plaintiff's claims in this suit. (*See, for example*, Dkt. 4).

The amended complaint is nearly devoid of factual information regarding Plaintiff's claims. His claims seem to arise from a psychiatric hospitalization that occurred in early 2015. (*See id.* at ¶ 25). Plaintiff alleges that he was hospitalized because he had sent a letter to residents of Orchard Park, New York. (*See id.* at ¶ 28(b)). Plaintiff asserts that each Defendant conspired to harass Plaintiff, to unreasonably search and seize Plaintiff, and to have Won Hoon Park, M.D. ("Dr. Park"), torture Plaintiff while he was hospitalized. (*See generally id.*). Plaintiff contends that each Defendant failed to act with reasonable cause and due care, and violated Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights. (*See id.* at ¶¶ 30(4), 47, 50, 55, 65).

Plaintiff's first claim alleges that Defendant Town of Orchard Park ("Town of Orchard Park"), through Police Officer Robert Simmons ("Simmons"), harassed Plaintiff with "the same series of questions, over and over again." (*See id.* at ¶¶ 25-27, 30(4)).

Plaintiff's second claim alleges that Simmons unreasonably searched and seized Plaintiff without reasonable cause because Plaintiff had mailed the aforementioned letters to a "Ms. S" and to Simmons himself. (*See id.* at ¶¶ 31-33).

Plaintiff's third claim alleges that Defendant Twin City Ambulance Corp. ("Twin City") "[r]ecklessly performed malice, oppression, retaliation, harassment and Persecution toward Plaintiff." (*Id.* at ¶ 37). A female employee in the Twin City ambulance tasked with transporting Plaintiff to Defendant Erie County Medical Center

("ECMC") allegedly told Plaintiff he would be held at ECMC "for quite a length of time." (*Id.* at ¶ 38). Plaintiff further claims that the same employee told Plaintiff to watch what he did and said when he got out of the ambulance, and during his time at ECMC. (*Id.*).

Plaintiff's fourth claim alleges that Defendant Town of Tonawanda ("Town of Tonawanda")—through Defendant Police Officers Frank Bartolotta ("Bartolotta"), Dave Humphrey ("Humphrey"), and Dave Gennuso ("Gennuso")—acted in cooperation with the other named Defendants to harass Plaintiff with repeated questioning, again in retaliation for the letters Plaintiff sent to "Ms. S" and Simmons. (*See id.* at ¶¶ 43-44). Plaintiff alleges the same violations against Bartolotta in claim five. (*See id.* at ¶¶ 49-50).

Plaintiff's sixth claim alleges that Defendant Erie County, New York ("Erie County")—through Executive Mark C. Poloncarz ("Poloncarz") and ECMC—harassed Plaintiff "with the same series of questions, over and over again," in retaliation for Plaintiff's letters to "Ms. S" and Simmons. (*Id.* at ¶¶ 55-56).

Plaintiff's seventh claim alleges that ECMC, acting through its employees in the psychiatric department, harassed Plaintiff and did not act with reasonable cause or due care. (*Id.* at ¶¶ 61-63).

Plaintiff's eighth claim alleges that Defendant U.P.P., Inc. ("UPP")—through its employees Dr. Park and Defendant Matthew Ruggieri, M.D. ("Dr. Ruggieri")— "[r]ecklessly performed malice, oppression, retaliation, harassment and Persecution toward Plaintiff." (*Id.* at ¶ 67). Plaintiff provides no further factual information in his eighth claim, or in his ninth claim against Dr. Ruggieri. (*See id.* at ¶¶ 67-76).

- 4 -

Throughout Plaintiff's claims, he alleges that Dr. Park attempted to torture Plaintiff between January 27, 2015, and February 2, 2015, presumably the dates of Plaintiff's hospitalization. (*See* Dkt. 4). Plaintiff's tenth cause of action alleges that Dr. Park tortured Plaintiff, but provides no further factual information. (*See id.* at ¶¶ 77-81).

Plaintiff attaches numerous documents to his complaint. Many are seemingly irrelevant to the claims Plaintiff raises. However, Plaintiff includes: a copy of his letter to "Ms. S" (Dkt. 4-4 at 5-10); letters from Plaintiff to Simmons (*id.* at 10-21); Plaintiff's "response" to an invoice from Twin City (*id.* at 25); Plaintiff's "response" to an invoice from UPP (Dkt. 4-5 at 1-3); and Plaintiff's "Patient Health Summary" dated February 4, 2015, from ECMC (*id.* at 4-10).

Plaintiff prays for general damages, special and exemplary damages, attorneys' fees, and seeks preliminary and permanent injunctions against the Defendants, restraining them from "interfering with Plaintiff's lawful speech, lawful Faith (Religious) Expressions, Subjecting him to malicious, oppressive, retaliating, and harassing, Persecution via Searches, Seizures, Arrest, IMPRISONMENT, and Violation of [Plaintiff's] Personhood under similar circumstances while doing Street Preaching. . . ." (Dkt. 4 at ¶ 30(3)). Plaintiff also seeks meetings with Defendants so that Defendants can apologize to Plaintiff for the way he was treated. (*See id.* at ¶¶ 30, 60, 76).

## DISCUSSION

### I.   Defendants' Motions to Dismiss

#### A.   Standard of Review

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief." *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473, 475 (W.D.N.Y. 2011).  A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of N.Y*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (citations omitted).

In addition, "[i]t is well settled that pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest

arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks omitted).

### B.      Plaintiff Has Not Established the Need for More Definite Statements

Plaintiff has filed two motions for more definite statements regarding Defendants' motions to dismiss. (*See* Dkt. 59; Dkt. 69). One refers to ECMC, Dr. Park, and Erie County, plus "ALL OTHER OF THE TEN (10) TOTAL DEFENDANTS." (Dkt. 59). The other motion refers only to the Town of Orchard Park and Simmons. (Dkt. 69). Fed. R. Civ. P. 12 allows a party to move "for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Such a motion "must point out the defects complained of and the details desired." *Id.*

Plaintiff's motions fail for two reasons. First, a motion to dismiss is not a "pleading" under the Federal Rules. *See* Fed. R. Civ. P. 7(a). Rule 12(e) allows a motion for a more definite statement "of a pleading. . . ." Fed. R. Civ. P. 12(e). Therefore, according to the plain language of the Federal Rules, Plaintiff cannot move for a more definite statement of Defendants' motions to dismiss. *See* 5C C. Wright, A. Miller, et al., *Federal Practice & Procedure* § 1376 (3d ed. 2016) [hereinafter *Federal Practice*] ("[A] Rule 12(e) motion . . . can be addressed only to a pleading to which a responsive pleading is permitted; it has no application to other pleadings or motions.") (internal citation omitted).

Second, even if Plaintiff could so move, Plaintiff's voluminous motion papers fail to specify a single vague or ambiguous statement in any of Defendants' motions to

dismiss. (*See* Dkt. 59; Dkt. 60; Dkt. 61; Dkt. 69; Dkt. 70; Dkt. 71). Plaintiff's motions for more definite statements thereby fail to comply with the requirements of Rule 12(e).

Thus, Plaintiff's motions for more definite statements (Dkt. 59; Dkt. 69) are denied.

### C.   Plaintiff Timely Amended the Complaint

Before addressing the merits of Defendants' motions to dismiss, the Court must first determine the proper pleading to which those motions are addressed. Defendants ECMC, UPP, Dr. Ruggieri, and Dr. Park argue that Plaintiff's filing of an amended complaint violated Fed. R. Civ. P. 15(a). (Dkt. 15-2 at 3-4; Dkt. 26-3 at 4-5; Dkt. 27-7 at 3). Rule 15(a)(1) allows a party to file an amended pleading, without consent of the opposing party or leave of court, within 21 days of its service, or within 21 days after the service of a responsive pleading or Rule 12(b), (e), or (f) motion. Fed. R. Civ. P. 15(a)(1). All other amendments require opposing party consent or leave of court. Fed. R. Civ. P. 15(a)(2).

Defendants argue that Plaintiff never served the original complaint, and, because no service issued, Plaintiff was not allowed to file an amendment as of right under Rule 15(a)(1). Rule 15(a) is intended to allow a party to include matters in an amended pleading where those matters were initially overlooked or unknown. 6 *Federal Practice* § 1473. "The purpose of the amendment-as-of-right provision is to avoid judicial involvement in the pleading process when there is little reason for doing so." 6 *Federal Practice* § 1480. Further, "[i]t is the rule in this circuit that, 'after the filing of (an initial)

complaint, the action remains pending in an inchoate state until service is completed.'" *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 665 (2d Cir. 1997) (citation omitted).

Here, although Plaintiff did not serve the original complaint before filing the amended complaint—leaving the amended complaint outside of the technical language of Rule 15(a)(1)—this Court finds that Plaintiff's amendment is valid without consent or leave of the Court. This action was in an inchoate state until the complaint was served. Amending a complaint before service avoids judicial involvement in the pleading process. There is no logical reason for the Rules to allow an amendment as-of-right after service has occurred, while simultaneously disallowing such an amendment before service. Perhaps repeated amendments before service would run afoul of the Federal Rules, but that is not the case here. Plaintiff amended his complaint once before serving notice on the opposing parties. If the original complaint was not served on Defendants, they can hardly claim prejudice by the amendment.

Further, the Court is mindful of the "jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities." *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Thus, even if Plaintiff was not entitled, as of right, to amend the complaint under Rule 15(a)(1), the Court would properly construe the amended complaint as a motion for leave to amend and accordingly assess Defendants' motion to dismiss arguments with respect to the allegations set forth in the amended complaint. *See Baranski v. NCO Fin. Sys.*, No. 13 CV 6349(ILG)(JMA), 2014 WL 1155304, at *4 (E.D.N.Y. Mar. 21, 2014).

D.     42 U.S.C. § 1983

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress. . . .

42 U.S.C. § 1983.  "In order to maintain a [§] 1983 action, two essential elements must

be present: (1) the conduct complained of must have been committed by a person acting

under color of state law; and (2) the conduct complained of must have deprived a person

of rights, privileges, or immunities secured by the Constitution or laws of the United

States."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).  "It is well settled that to

state a civil rights claim under § 1983, a complaint must contain specific allegations of

fact which indicate a deprivation of constitutional rights."  *Davidson v. Mann*, 129 F.3d

700, 701 (2d Cir. 1997) (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.

1987)).

As is relevant to the claims that Plaintiff attempts to pursue, a claim may be

asserted pursuant to § 1983 for the alleged unconstitutional involuntary commitment of a

nondangerous mentally ill person.  As explained by the Second Circuit:

> Substantive due process prohibits states from involuntarily committing
> nondangerous mentally ill individuals.  It does not, however, "require a
> guarantee that a physician's assessment of dangerousness be correct."
> Rather . . . an involuntary commitment violates substantive due process if
> the decision is made "on the basis of substantive and procedural criteria that
> are substantially below the standards generally accepted in the medical
> community."

*Bolmer v. Oliveira*, 594 F.3d 134, 142 (2d Cir. 2010) (citations omitted).  Put another way, "a physician's decision to involuntarily commit a mentally ill person because he poses a danger to himself or others shocks the conscience, thereby violating substantive due process, when the decision is based on 'substantive and procedural criteria that are substantially below the standards generally accepted in the medical community.'"  *Id.* at 143 (quoting *Rodriguez v. City of N.Y.*, 72 F.3d 1051, 1063 (2d Cir. 1995)).

Of course, in order to pursue a claim under § 1983, the conduct at issue must be under color of state law.  "[T]he core purpose of § 1983 is to provide compensatory relief to those deprived of their federal rights by state actors."  *Hardy v. N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (internal citations omitted).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997); *see, e.g., Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010).  Purely private conduct is not covered by § 1983.  *Am. Mfrs. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

"[C]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action."  *Perez v. Sugarman*, 499 F.2d 761, 764 (2d Cir. 1974) (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)).  A private entity is a state actor when "(1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the

'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test']." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (quoting *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009)) (alterations in original). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

Moreover, a municipality cannot be held liable under § 1983 based solely on *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "To hold a municipality liable in such an action, 'a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

### E.  Plaintiff's Amended Complaint Must be Dismissed for Failure to Comply with Rule 8(a)

With the exception of Defendants Twin City and Erie County, each Defendant has argued that dismissal is warranted because the amended complaint fails to comply with the requirements of Fed. R. Civ. P. 8(a)(2). (*See* Dkt. 15-2 at 4-5; Dkt. 26 at 2; Dkt. 27-7 at 3-6; Dkt. 48-2 at 4-5; Dkt. 51-2 at 6-7). ECMC summarizes Defendants' argument: "[T]he amended complaint does not comply with the pleading requirements of FRCP 8(a)(2) in that it is vague, confusing, and does not contain statements setting forth a claim showing that the plaintiff is entitled to relief. . . ." (Dkt. 27-7 at 1).

"It has long been understood that a defendant may base [a Rule 12(b)(6)] motion on either or both of two grounds: (1) a challenge to the 'sufficiency of the pleading' under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim." *McNamee v. Scholarie Cty. Jail*, No. 9:06-CV-1364 (LEK/GHL), 2008 WL 686796, at *2 (N.D.N.Y. Mar. 10, 2008); *see, e.g.*, 5C *Federal Practice* § 1363 ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).").

The Federal Rules require a pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each allegation must also be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Taken together, Rules 8(a) and 8([d])(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." 5 *Federal Practice* § 1217. "[U]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin*, 861 F.2d at 42.

"When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial or to dismiss the complaint." *Id.* (internal citation omitted). Rule 8 presents a lenient standard for pleadings. *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004). Dismissal is only appropriate when the complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin*, 861 F.2d at

42. When a court dismisses a complaint under Rule 8(a), the court must allow leave to amend the complaint unless "leave to amend has previously been given and the successive pleadings remain prolix and unintelligible, or where the substance of the claim pleaded is frivolous on its face." *Id.* (internal citations omitted).

Here, Plaintiff's pleading fails to clear the relatively low bar set by Rule 8. Plaintiff's amended complaint is undeniably prolix. The amended complaint spreads over 43 pages, with 132 pages of attachments. (*See* Dkt. 4). Much, if not most, of the amended complaint is confusing, irrelevant, or unintelligible. (*See, for example*, Dkt. 4-1 (attaching irrelevant Ohio state court documents amended with Plaintiff's handwritten notes)). The true substance, if any, of Plaintiff's claims is well disguised.

As a result, pursuant to Rule 8(a), the Court dismisses all of Plaintiff's claims. *See Jemmott v. N.Y. City Transit Auth.*, 15-3510-cv, 2016 WL 4719056, at *2 (2d Cir. Sept. 9, 2016) (upholding dismissal under Rule 8(a) because the plaintiff "did not set forth a statement or summary of the facts and almost exclusively relied on attached documents, many of which were unidentified and alluded to numerous non-chronological and unconnected events spanning a number of years and interspersed with seemingly irrelevant information"); *O'Neil v. Ponzi*, 394 F. App'x 795, 796 (2d Cir. 2010) (upholding a dismissal under Rule 8(a) because "[the plaintiff] indulge[d] in a prolix and unintelligible conspiracy theory novel which fail[ed] to allege that [the] defendants' conduct was the legal, much less the logical, cause of her injury"); *Jones v. Nat'l Commc'ns & Surveillance Networks*, 266 F. App'x 31, 33 (2d Cir. 2008) (finding the dismissal of a "single-spaced 58–page complaint with 87 additional pages of attachments,

alleging over twenty separate causes of action against more than 40 defendants" proper under Rule 8(a)).  *Cf. Shomo v. State of N.Y.*, 374 F. App'x 180, 183 (2d Cir. 2010) (reversing a dismissal under Rule 8(a) because the plaintiff made "specific references to events that he claimed were evidence of [constitutional violations]").

Notwithstanding this dismissal, the Court grants Plaintiff leave to file a second amended complaint, as required when the Court dismisses under Rule 8(a), *see Salahuddin*, 861 F.2d at 42, or under Rule 12.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 49 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.  Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion.  Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (internal citations omitted). Based on the sparse information provided in the amended complaint, Plaintiff could theoretically make out a § 1983 claim against at least some of the Defendants; he just has not done so yet.  Because Plaintiff could allege facts sufficient to support his claim, the Court grants him leave to file a second amended complaint.

In making out his second amended complaint, Plaintiff should include facts relating to each Defendant's involvement in the alleged constitutional violations, including, if applicable, the actual conduct which violated Plaintiff's rights, the individual or entity that committed the act(s), and the date and location of such violations.  As noted above, state action is required to make out a constitutional claim under § 1983.  Private individuals and corporations are generally not state actors under §1983, unless they fall

into an exception under the compulsion test, the close-nexus test, or the public-function

test. Plaintiff must include allegations, where appropriate, that each Defendant is a state

actor for purposes of §1983.[1] Plaintiff should also refrain from including or appending

any information or material not relevant to his claims against the named Defendants in

this case.

Plaintiff is cautioned that, if he elects to take advantage of the opportunity

provided by the Court to file a second amended complaint, this pleading will constitute

his third attempt to assert claims against Defendants in this case, and, notwithstanding his

*pro se* status, if Plaintiff fails to state a claim against one or more Defendant, the Court

will dismiss those claims without granting another opportunity to cure the deficiencies.

### F.   **Twin City's Motion to Dismiss**

As stated above, the Court has dismissed the amended complaint pursuant to Rule

8(a), including any claims against Twin City, as it is empowered to do under Rule 8(a)

---

[1]   The Court notes that UPP and Dr. Ruggieri included facts in their motion to dismiss that were not pleaded in the amended complaint. (*See* Dkt. 15-2 at 8 (stating that UPP and Dr. Ruggieri "are a private medical group and private physician")). Although this may be true, the Court may not consider facts outside of the complaint in determining a Rule 12(b)(6) motion unless the fact is included in, relied upon, or integral to the complaint; otherwise the motion is treated as one for summary judgment under Rule 56. *See Friedl v. City of N.Y.*, 210 F.3d 79, 83-84 (2d Cir. 2000) (finding that a district court errs if, in deciding a Rule 12(b)(6) motion, it "relies on factual allegations contained in legal briefs or memoranda."); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (holding that, even if not attached to the complaint, a document which is "*integral to the complaint* may be considered by the court in ruling on [a Rule 12(b)(6)] motion.") (emphasis in original) (internal citations omitted); *Cortec Indus.*, 949 F.2d at 47-48 ("Where [the] plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

even though Twin City did not base its motion to dismiss on the provisions set forth in Rule 8(a). (*See* Dkt. 21); *see also Salahuddin*, 861 F.2d at 42 (providing that when a complaint fails to comply with Rule 8(a), "the court has the power, on its own initiative or in response to a motion by the defendant . . . to dismiss the complaint.").

Nonetheless, the Court will also address, for purposes of completeness, the merits of Twin City's motion to dismiss. Plaintiff's third claim alleges that a woman employed by Twin City made statements to Plaintiff regarding how long Plaintiff was to be held at ECMC, and warned Plaintiff that he should "watch what [he] said and did."[2] (Dkt. 4 at ¶ 38). Twin City argues that Plaintiff's claim is insufficient as a matter of law because Plaintiff failed to allege that Twin City acted under color of state law. (*See* Dkt. 21-2). Plaintiff did not respond to Twin City's motion to dismiss.

Unlike his allegations against the above Defendants, Plaintiff provides some allegations in the amended complaint which allow the Court to make a decision as to the legal sufficiency of Plaintiff's claims against Twin City. Plaintiff alleges that Twin City provided a "Contracted Service" to the Town of Tonawanda and ECMC. (*See* Dkt. 4 at ¶¶ 38, 40). The amended complaint styles Twin City as a corporation, suggesting that Plaintiff knows Twin City is a private entity. (*See* Dkt. 4). The performance of a public contract by a private entity does not, in itself, give rise to § 1983 liability under the close-nexus test. *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982); *see, e.g., Brentwood Acad.*

---

[2]    In responding to another party's motion to dismiss, Plaintiff alleges that a Twin City employee tried to kill Plaintiff by jumping on him and putting "the full force of [the employee's] knee and leg below the knee to [Plaintiff's] throat." (Dkt. 39 at 11). However, Plaintiff does not include this allegation in his amended complaint. (*See* Dkt. 4).

*v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 300 (2001).  However, when the state exercises dominion over the internal management functions of a private entity—through direct control or regulation—the private entity can be considered a state actor under the close-nexus test.  *See Grogan v. Blooming Grove Volunteer Ambulance Corp.*, 768 F.3d 259, 269 (2d Cir. 2014); *see, e.g., Horvath v. Westport Library Ass'n*, 362 F.3d 147, 152 (2d Cir. 2004).  The Court assumes true Plaintiff's allegation that Twin City was contracted to provide ambulance services for the Town of Tonawanda.  But Plaintiff provides no additional information alleging a close nexus between the state and Twin City—such as state control over the internal management decisions of Twin City or public regulation of its conduct.  The allegations in the amended complaint are insufficient to establish a claim that Twin City was a state actor under the close-nexus test.  *See, e.g., Grogan*, 768 F.3d at 269 (holding a town's contract with a private ambulance corporation insufficient, without additional town control over management or personnel decisions, to establish state action under the close-nexus test).

Similarly, Plaintiff has not alleged Twin City was a state actor under the compulsion test.  To be a state actor under the compulsion test, the private entity must "act pursuant to the coercive power of the state or [be] controlled by the state."  *Hollander*, 624 F.3d at 34.  Plaintiff does not argue or allege that the state controlled or coerced Twin City to transport Plaintiff to ECMC.  Plaintiff only alleges that Twin City did so as a matter of contract.

Finally, Plaintiff also fails to assert that Twin City engaged in conduct traditionally within the ambit of the state so as to satisfy the public-function test.  This

test "focuses not on whether the activity delegated to the private entity has been regularly performed by governments, but instead on whether the activity historically has been an exclusive prerogative of the sovereign. . . ." *Grogan*, 768 F.3d at 265 (internal citation omitted). "Emergency medical care and general ambulance services" are not historically within the exclusive prerogative of the state, so private-service providers of such services are not state actors under the public-function test. *Id.*

As a result, Plaintiff's single, conclusory statement—that Twin City provided contracted service to the Town of Tonawanda—is insufficient to state a claim against Twin City because Plaintiff fails to allege state action. *See Ciambriello*, 292 F.3d at 324. As a result, Plaintiff's claims against Twin City must be dismissed.

However, although the Court questions whether, in view of the allegations set forth in the amended complaint, Plaintiff could state a viable claim against Twin City, it will nonetheless allow Plaintiff one final opportunity to attempt to assert a claim. *See Cortec Indus.*, 49 F.2d at 48. In making out his second amended complaint, Plaintiff should allege, if appropriate, the facts of Twin City's or its employees' violative conduct, the date and location of such violations, whether Twin City was a state actor for purposes of § 1983, and the grounds upon which Plaintiff bases his claims of state action.

**G.     Erie County's Motion to Dismiss**

Plaintiff's sixth claim alleges that Erie County, through Poloncarz and ECMC, was involved with Plaintiff's mistreatment. (*See* Dkt. 4 at ¶¶ 55-56). Erie County filed a motion to dismiss pursuant to Rule 12(b)(6). (Dkt. 35). Like Twin City, Erie County did

not raise any argument under Rule 8(a). (*See id.*). Plaintiff did not respond to Erie County's motion.

Because the Court has dismissed the claims in the amended complaint against all Defendants, including Erie County, pursuant to Rule 8(a), it need not address the merits of the claims raised by Erie County in its Rule 12(b)(6) motion. However, the Court addresses the motion to point out a fatal defect for the purposes of avoiding similar defects in any future motion practice by Erie County.

This District's Local Rules of Civil Procedure require that:

> Absent leave of Court or as otherwise specified, upon any motion filed pursuant to [Fed. R. Civ. P.] 12, 56 or 65(a), the moving party shall file and serve a memorandum of law and the opposing party shall file and serve an answering memorandum. Failure to comply with this requirement may constitute grounds for resolving the motion against the non-complying party.

L.R. Civ. P. 7(a)(2)(A); *see, e.g.*, *Watts v. Fleck*, No. 10-CV-440S, 2012 WL 1391928, at *1 n.1 (W.D.N.Y. Apr. 20, 2012) (noting that L.R. Civ. P. 7(a)(2)(A) "*requires*" the inclusion of a memorandum of law with a Rule 12(b)(6) motion) (emphasis original). The Local Rules prohibit the inclusion of legal arguments in motion affidavits. L.R. Civ. P. 7(a)(3).

In support of its motion, Erie County filed only two affidavits. (Dkt. 35). No memorandum of law was attached, nor was one filed at a later date. (*See* Dkt. 35). One of the affidavits includes legal arguments. (*See* Dkt. 35-1 at 3-5). Both affidavits also include facts additional to those alleged in the amended complaint. As stated above, in deciding a Rule 12(b)(6) motion, the Court is generally limited to reviewing "the

allegations contained within the four corners of [Plaintiff's] complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998); *see, e.g., Friedl v. City of N.Y.*, 210 F.3d 79, 83-84 (2d Cir. 2000). Erie County's factual allegations were neither integral to nor relied upon in framing the complaint. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Cortec Indus.*, 949 F.2d at 47-48.

Again, the amended complaint, including any claims against Erie County, is being dismissed pursuant to Rule 8(a). In the event there is any future motion practice, all parties should endeavor to comply with the Court's Local Rules and be mindful of whether the form of the motion allows for the consideration of facts outside the four corners of the pleadings. In other words, in the event that Defendants seek to have this Court resolve claims based upon facts outside the pleadings, they must pursue relief through a different procedural mechanism than Rule 12(b)(6).

## II.   <u>Plaintiff's Other Motions</u>

### A.   <u>This Action is Exempted from the District's ADR Plan</u>

On August 12, 2016, Plaintiff filed a motion to opt out of ADR as to every Defendant. (Dkt. 53). Plaintiff asserts that relief from ADR is appropriate due to the "repeated blatant perjury that 3 sets of attorneys representing 5 Defendants have proven to have made, and crimes of the rest to come." (*Id.* at 2).

This District requires, in most cases, automatic referral to ADR under the Court's Alternative Dispute Resolution Plan ("ADR Plan"). ADR Plan § 2.1. Motions to opt out of ADR "shall be granted only for 'good cause' shown. . . . A party seeking relief from ADR must set forth the reasons why ADR has no reasonable chance of being

productive." ADR Plan § 2.2(C).  Plaintiff's motion papers fail to comply with the good cause showing required by the Court's ADR Plan.  Nonetheless, because the Court independently finds that ADR has no reasonable chance of being productive, the Court exempts this action from the ADR Plan.  *See* ADR Plan § 2.2(D) ("The assigned Judge may, *sua sponte*, exempt any case from the [District]'s ADR Plan.").  Accordingly, Plaintiff's motion (Dkt. 53) is granted.

## B.   Plaintiff's Motions for an FBI Investigation and for an Injunction are Denied

On June 22, 2016, Plaintiff filed a motion for an FBI investigation and for an injunction against all Defendants.  (Dkt. 9).  Plaintiff requests an order that the FBI "investigate + when proven file criminal charges against Valarie – Counselor II + 2 other women at crisis services who are an evil tool of the ECMC. . . ." (*Id.* at 1).  Plaintiff alleges that Valarie and another woman from crisis services met with him at his home on June 17, 2016, and that Plaintiff was involuntarily hospitalized on that day, allegedly in retaliation for his filing of the instant suit.  (*Id.* at 7-9).  Plaintiff alleges rough treatment during the transport to ECMC by Twin City Ambulance.  (*See id.* at 8-9).  Plaintiff was released by ECMC on June 18, 2016.  (*Id.* at 13).  Plaintiff also alleges a similar incident on June 21, 2016, in which Valarie and another women told Plaintiff to drop the instant action or he would be forcibly hospitalized at ECMC.  (*Id.* at 5).

Plaintiff asks this Court "to order any and all 10 Defendants in my lawsuit, not to violate criminal laws to try to force me to drop my case" and for an order forcing the FBI to investigate the complaint Plaintiff filed with it.  (*Id.* at 11).  "A party seeking a

preliminary injunction must show irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor." *Almontaser v. N.Y. City Dep't of Educ.*, 519 F.3d 505, 508 (2008).

Plaintiff has not met the standard required for injunctive relief. Therefore, Plaintiff's motion for an injunction is denied.

Plaintiff's motion for an FBI investigation is also denied. Fed. R. Civ. P. 7 requires that all motions "state with particularity the grounds for seeking the order. . . ." Fed. R. Civ. P. 7(b)(1)(B). Plaintiff provides no legal basis for an order of this Court forcing the FBI to pursue an investigation, nor is there any factual basis presented by Plaintiff justifying such relief.

Accordingly, Plaintiff's motion for an FBI Investigation and injunctive relief (Dkt. 9) is denied.

### C.       Plaintiff's Request for a Special Prosecutor is Denied

To the extent that Plaintiff requests the appointment of a special prosecutor (*see* Dkt. 100 at ¶ 23), Plaintiff's request is similarly denied. Plaintiff provides no legal basis for such an order by this Court, nor do Plaintiff's allegations merit such extraordinary relief.

### D.       Plaintiff's Motion for an Extension of Time is Denied as Moot

Plaintiff moved for an extension of time to respond to any filings from Defendants through July 6, 2016. (Dkt. 10 at 1). At the time Plaintiff filed his motion, no Defendant had filed a motion, nor had the Court entered any scheduling orders. In fact, at the time

that Plaintiff filed his motion, there was no deadline in place by which Plaintiff needed to file a response. The date through which Plaintiff requested an extension has passed, and the requested relief appears unnecessary. Therefore, Plaintiff's motion for an extension of time (Dkt. 10) is denied as moot.

## III.   Dr. Park's and Erie County's Motions for Equitable Relief

On September 7, 2016, Dr. Park filed a motion under Fed. R. Civ. P. 65 requesting that the Court order Plaintiff to cease from sending non-paper objects to Dr. Park and his attorneys. (Dkt. 82). In an affidavit, one of Dr. Park's attorneys, Kevin A. Ricotta, avers that Plaintiff had sent "a pair of blue surgical gloves" and "a piece of red cloth" with the papers served in this case. (Dkt. 82-1 at ¶ 9; *see also* Dkt. 82-2 (showing a picture of the blue surgical gloves); Dkt. 82-3 (showing a picture of the red cloth)). The Court also received a letter and color picture from Dr. Park's other attorney, Bryan J. Daniels, on January 3, 2017. (Dkt. 102). Mr. Daniels stated that Plaintiff sent "unsolicited papers" to Mr. Daniels unconnected with any motion pending before the Court, demanding payment for "Biblical Restitution." (*Id.* at 1). Included with Plaintiff's papers was a three-dimensional model of a noose. (*Id.* at 2).

In his purported response papers to Dr. Park's motion, Plaintiff provides no argument opposing the motion; he merely quotes biblical verses with no discernable relevance to the issues at hand. (*See* Dkt. 94 at ¶¶ 39-43). Plaintiff denies sending any demand of payment. (Dkt. 101 at ¶ 11). Plaintiff also states that the object he sent was not a noose, but a "gallows." (*Id.* at ¶ 7).

Erie County has filed a motion under Fed. R. Civ. P. 26 requesting similar relief to that requested by Dr. Park. (*See* Dkt. 92). Rule 26 addresses the general provisions governing discovery. *See* Fed. R. Civ. P. 26. A court "must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive. . . ." Fed. R. Civ. P. 26(b)(2)(C)(i). Erie County seems to argue that Plaintiff's physical objects are inconvenient and burdensome. (*See* Dkt. 92-1 at ¶¶ 6-8).

This case has not yet entered discovery. Discovery cannot start until the parties confer, as required by Rule 26(f), or as otherwise allowed by the Federal Rules, or by court order. *See* Fed. R. Civ. P. 26(d)(1).

With respect to Dr. Park's requested relief of a restraining order pursuant to Rule 65: "[E]very restraining order must: (A) state the reasons why it was issued; (B) state its terms specifically; and (C) describe in reasonable detail . . . the acts or acts restrained or required." Fed. R. Civ. P. 65(d). "The grant and nature of protection is singularly within the discretion of the district court." *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973).

The Court finds that the issuance of a restraining order under Rule 65 is not, at this time, the appropriate mechanism to address the concerns raised, nor is it appropriate at this juncture to issue an order pursuant to Rule 26. Still, the Court finds Plaintiff's non-paper submissions to opposing parties and their attorneys inappropriate, and the model noose (or "gallows") could reasonably be interpreted as threatening. As described above,

all of Plaintiff's claims have been dismissed, though Plaintiff may attempt to correct the deficiencies through the filing of a second amended complaint.

**Plaintiff is hereby warned not to abuse court process by sending immaterial or threatening papers or items to opposing parties or their attorneys.** *See* **Fed. R. Civ. P. 11(b)(1) (disallowing a party from using court process for an improper purpose, "such as to harass" the opposing side). Plaintiff should refrain from sending non-paper or three-dimensional objects not connected with this litigation. Plaintiff is hereby cautioned that violations of Rule 11(b) may result in sanctions.**

Thus, Dr. Park's motion for a restraining order pursuant to Rule 65 (Dkt. 82) is denied without prejudice, and Erie County's motion pursuant to Rule 26 (Dkt. 92) is denied without prejudice.

## IV.   Plaintiff's Second Amended Complaint

As noted above, Plaintiff will be afforded leave to file a second amended complaint. **Plaintiff must file the second amended complaint by March 1, 2017, otherwise this action will be terminated.** Plaintiff's second amended complaint must include the necessary allegations, as directed above, in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's second amended complaint must be a short and plain statement of his claims for relief against Defendants. Plaintiff should include the factual basis for his claims against each Defendant. Plaintiff should attach only those documents relevant to his claims against Defendants.

Plaintiff is advised that the second amended complaint is intended to **completely replace** his first amended complaint. *See Int'l Controls Corp.*, 556 F.2d at 668 ("[A]n

amended complaint ordinarily supersedes the original and renders it of no legal effect."). Plaintiff's second amended complaint must include all of the allegations against Defendants so that the second amended complaint may stand alone as the sole complaint in this action.

Plaintiff has already filed two complaints in this case, and leave is granted to file a third complaint. **Plaintiff is cautioned that the Court will not grant leave to amend the complaint if Plaintiff fails to file the second amended complaint by March 1, 2017, and in accordance with the Federal Rules of Civil Procedure.** *See Salahuddin*, 861 F.2d at 42 (providing that a district court can dismiss without allowing leave to replead "where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible.").

## CONCLUSION

For the foregoing reasons, the Court hereby:

DENIES Plaintiff's motions for more definite statements (Dkt. 59; Dkt. 69);

GRANTS the various motions to dismiss filed by Defendants U.P.P., Inc., Dr. Matthew Ruggieri, Dr. Won Hoon Park, Erie County Medical Center Corporation, the Town of Orchard Park, Robert Simmons, the Town of Tonawanda, Frank Bartolatta, Dave Humphrey, and Dave Gennuso (Dkt. 15; Dkt. 21; Dkt. 26; Dkt. 27; Dkt. 48; Dkt. 51), on the grounds that the amended complaint fails to comply with Fed. R. Civ. P. 8(a);

DENIES the motion to dismiss filed by Defendant Erie County without prejudice (Dkt. 35), but, on its own initiative, dismisses the claims in the amended complaint against Erie County for failure to comply with Fed. R. Civ. P. 8(a);

GRANTS the motion to dismiss filed by Defendant Twin City Ambulance Corp. (Dkt. 21) and further, on its own initiative, dismisses said claims pursuant to Fed. R. Civ. P. 8(a);

GRANTS Plaintiff leave to file a second amended complaint, as the foregoing dismissals are without prejudice, and directs that Plaintiff must file a second amended complaint on or before March 1, 2017, in accordance with this Decision and Order, and the Clerk of Court is directed to terminate this action without prejudice in its entirety if Plaintiff fails to file a second amended complaint by **March 1, 2017**, without further order of the Court;

GRANTS Plaintiff's motion to opt out of ADR (Dkt. 53);

DENIES Plaintiff's motion for a permanent injunction (Dkt. 9);

DENIES Plaintiff's motion for an FBI investigation (Dkt. 9);

DENIES Plaintiff's request for a special prosecutor (Dkt. 100 at ¶ 23);

DENIES Plaintiff's motion for an extension of time (Dkt. 10) as moot; and

DENIES Dr. Park's motion for a restraining order without prejudice (Dkt. 82), and Erie County's motion pursuant to Rule 26 (Dkt. 92) without prejudice; however, **Plaintiff is hereby cautioned that sending immaterial or threatening papers or items to opposing parties or their attorneys may result in sanctions pursuant to Fed. R. Civ. P. 11, or other appropriate relief.**

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:        January 30, 2017
              Rochester, New York